## Reck v. Phenix Ins. Co.

*(Supreme Court, General Term, First Department.* November 7, 1889.)

1. MARINE INSURANCE—REGISTERED TONNAGE.
   A warranty not to load a vessel more than her "registered tonnage" is a warranty not to load more tons of weight than the ship could carry, as entered upon the official record as the ship's tonnage.

2. SAME.
   An American ship was registered at the custom-house at 916 71-96 tons. She was transferred to the Hanoverian flag, and then was registered at 792 tons. *Held,* that a vessel's registered tonnage is that of her home port, and a warranty made after such transfer, not to load above her registered tonnage, was broken by loading her with 901 tons.

Motion for new trial on exceptions.

Frederick Reck sued the Phœnix Insurance Company on a policy of insurance. Judgment was rendered for plaintiff. For opinion on former motion in the case, see 5 N. Y. Supp. 543.

Argued before VAN BRUNT, P. J., and DANIELS and BARRETT, JJ.

*George A. Black,* for the motion. *Joseph A. Shoudy,* opposed.

VAN BRUNT, P. J. The only exception which it is necessary to consider on this motion is that which was taken by the defendant to the direction of a verdict in favor of the plaintiff by the court. Neither party asked to go to the jury upon any question of fact, and both asked the court to direct a verdict. Under this state of the record the only question presented by the exception to be mentioned is whether there is any evidence to sustain the direction given. This case has been four times tried at the circuit. Upon each of the three trials preceding the one now under consideration the complaint was dismissed, and such dismissal was declared by the general term to be erroneous, and all the questions raised upon this appeal, except the one of overloading, have been settled against the defendant, and even this it is claimed by the plaintiff was also determined upon the last appeal adversely to the defendant. This action is brought to recover for a loss upon a policy of insurance issued in the year 1865 upon the ship Elise Ruger. Among the other provisions of the policy is one whereby the assured warranted that the ship should not be loaded more than her registered tonnage with lead, marble, coal, or iron on any one voyage. The evidence showed that the ship sailed with a cargo of coal of 901 tons, each ton weighing 2,240 pounds, and the question presented is whether thus laden there was a breach of the warranty above mentioned.

What is meant by "registered tonnage" in the policy? "Tonnage" is defined to be "the cubical contents or burden of a ship in tons, or the amount of weight which one or several ships will carry." "Ton" is defined to be "a certain weight in pounds," or "a certain weight or space by which the burden of a ship is estimated." "To register" is "to enter in a register; to record formally and distinctly; to enroll; to enter in a list." A "register" is defined to be "an official record." The "registered tonnage" of a ship, then, appears to be the cubical contents of the ship expressed in tons, or the amount of weight which she will carry as entered upon some official record. That cubical contents could not have been intended by the parties in the clause in question seems to be apparent from the language of the warranty: "Warranted not to load more than her registered tonnage with lead, marble, coal, or iron on any one passage." A cube of lead would weigh very much more than the same cube of coal, therefore it was not space to be filled which was referred to, but weight, and by "registered tonnage" the parties understood to be meant the number of tons of weight which the ship could carry as entered upon the official record as the ship's tonnage.

This brings us to the real question in the case,—what was the official record of this vessel's carrying capacity at the time of the issuance of this policy? The Elise Ruger was formerly an American ship, built at Mystic, Conn., and appears to have been registered at the New York custom-house by the laws of the United States, and a certificate of registry issued to her. Her tonnage as then registered was 916 71–96 tons. Prior to the time of the issuance of the policy of insurance in question the ship was not remeasured here, nor did she ever receive any other certificate of American registry. In 1862 or 1863 the ship was placed under the flag of Hanover, and was sailing under such flag at the time of this insurance. When placed under the Hanoverian flag, the ship received a new register, which was lost with the vessel. In the ships' register book kept at Stade (the county-seat of the port of Geescumunde, the home port of the vessel) the tonnage of the vessel is stated to be 351.97 commercial lasts, which appear to equal 792 tons. It is true that the plaintiff claims that there is evidence showing that 351.97 commercial lasts are the equivalent of 1,056 tons, but an examination of the evidence upon which this claim is founded shows that this apparent difference arises from a change in the rules for measurements adopted by the German Empire, July 5, 1872, long after the loss of the vessel in question. If the record of the vessel's carrying capacity as found in the New York custom-house at the time of the issuing the policy is to be considered as the one referred to, then there was no breach of the warranty. If, however, her Hanoverian register is to control, then there seems to have been a breach.

At the former trial, there being no evidence of any other registry, the New York custom-house registry was deemed to have been referred to; but upon this trial it has been made to appear that the vessel was not then sailing under that registry; that she had abandoned her character as an American vessel; that she was sailing under a foreign flag; had procured a new registry, upon which her tonnage or carrying capacity was stated as 351.97 commercial lasts, the equivalent of 792 tons. It seems to us that this evidence has entirely changed the effect of the proof as it appeared upon the previous trial. The parties, in speaking of the "registered" tonnage of a vessel, must have referred to that tonnage which appeared upon the papers under which the ship was then sailing, and not to the tonnage as contained in a register which had been abandoned, and for which a new one had been substituted. A ship's register is a well-understood paper or document. It is a license from the government whose flag she flies and sails under, and contains particulars for her identification. It is the ship's passport, issued by the government whose citizen she is. Among the items stated in this register is her carrying capacity or tonnage, and this is taken from the entry upon the official record of her home port, and hence is her registered carrying capacity or tonnage. The ship's then registered tonnage, therefore, seems to be that which is entered upon the official record of her home port, and applying this rule the warranty seems to have been broken, she being loaded with 901 tons, when her register allowed only 792 tons. The judgment appealed from must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.